## No. 11,005.

### SUCCESSION OF MRS. A. E. COMSTOCK.

A judgment sustaining an opposition to an administrator's account, by which the opponent is decreed entitled to recover a sum of money due by the deceased, does not affect the personal liability of the administrator, who was in no way responsible for the debt, who was not asked to be, and was not, condemned to pay the amount.

The registry of such judgment in the mortgage records does not create a judicial mortgage against the administrator, whom it did not affect individually, and the judgment creditor is not entitled to any preference by virtue of such pretended mortgage out of the proceeds of the real estate of such administrator.

Execution can issue against a succession representative who fails to pay a judgment creditor *only* when he has funds in hands wherewith to discharge the debt and does not do so, after due demand, and when proceedings have been previously instituted against him, culminating into a *personal* judgment against him on which the writ can issue.

Courts of justice will not supply wanting proceedings and assume the existence of facts which have no being.

APPEAL from the Sixteenth District Court, Parish of East Feliciana. *Brame, J.*

*D. J. Wedge* and *Merrick & Merrick* for the Administrator, Appellant.

*W. F. Kernan* contra.

The opinion of the court was delivered by

BERMUDEZ, C. J.    The question presented in this controversy involves the right claimed by the administrator of this succession to a *judicial* mortgage in his favor, in his individual name, on the real estate left by the deceased or its proceeds.

It appears that Mrs. Comstock, while acting as executrix of her husband, Geo. C. Comstock, filed an account which was opposed by H. B. Vaughn, who asked to be placed thereon for $4097.

His opposition was sustained for that sum, with interest on fractions of the same from different dates, on June 30, 1885. This judgment was recorded in the mortgage records on the 3d of July following.

Mrs. Comstock having died, her succession was opened by Vaughn, who was appointed to administer it.

He subsequently rendered an account showing a balance of $2199, which he proposed to apply to the payment of his judgment, claiming that its registry gave him a judicial mortgage on her property and its proceeds. This pretension was opposed by one D'Armond, who claimed for himself $715 with a *judicial* mortgage and denied any in favor of Vaughn.

After hearing, the court sustained the opposition and rejected Vaughn's pretension. Hence this appeal.

An inspection of the judgment in favor of Vaughn, from the registry of which he contends that a judicial mortgage was created in his favor against Mrs. Comstock and her real estate, shows that it is merely one in favor of Vaughn *against the succession* of Mr. Comstock and *in no way* one against Mrs. Comstock *individually*. The opposition does not charge her with any personal liability for the amount claimed; there was no contention on the subject, and therefore no judgment against her.

There is no doubt that administrators may be held personally for omissions or commissions in certain cases concerning the payment of creditors, but there must be specific charges in such instances; issues must be formed and a personal responsibility judicially fixed, none of which exists in the present litigation. C. P. 993, 1057 and seq.; 16 L. 126; 10 An. 543; 13 An. 416; 18 An. 220.

Judgment affirmed.

## ON APPLICATION FOR REHEARING.

Notwithstanding the protestations and assurances of the counsel for Vaughn, the court persists in affirming that the judgment, from the recording of which a *judicial* mortgage is claimed to have sprung, is *not a personal* judgment against Mrs. Comstock, but is a judgment on his opposition to an account in the succession of Mr. Comstock against *his* estate, ordering the opponent to be placed upon it and paid accordingly.

It will not do to argue that *execution* could have issued against

Mrs. Comstock on that judgment and that no execution could thus have issued, unless the judgment was a *personal* judgment.

This is an assumption altogether unauthorized, a *petitio principii* and a fallacy, which creates a confusion of ideas on the subject.

Under the articles of the Code of Practice treating of this matter, and the several authorities cited in the opinion, the creditor might have taken that judgment as a basis for a *personal* judgment against Mrs. Comstock, if, having funds to pay, she had refused or failed to do so, the same to be obtained on subsequent contradictory *proceedings*, culminating into such personal judgments; but it is *not until then* that execution could issue. C. P. 993, 1057 and seq.; 16 L. 126; 10 An. 543; 13 An. 416; 18 An. 220.

No such proceedings were taken and no personal judgment therefore was subsequently rendered, against Mrs. Comstock, on which execution could have issued.

Vaughn complains that D'Armond, whose claim was recognized with a judicial mortgage, is not entitled to that security, because Mrs. Comstock having died in October, 1889, and D'Armond's judgment having been recorded in December following, the registry did not create a judicial mortgage in his favor, because it was made *after* her death. 27 An. 552; 43 An. 885; 40 An. 703.

We did not consider this objection in the opinion for the reason that we thought that, as Vaughn was no creditor *at all* of Mrs. Comstock, he had no interest to attack D'Armond and that the district judge had nevertheless recognized the claim and the mortgage.

The record shows that D'Armond is a creditor, as a transferree of a judgment against Mrs. Comstock for $715, but does not establish the date of the death of Mrs. Comstock.

D'Armond surely had the right as a judgment creditor to oppose the absorption by Vaughn of the residue of $2199, in favor of his judgment against the succession of Mr. Comstock, and the district court was right in so holding.

If it be true that, at the time he was recognized such creditor, Mrs. Comstock had ample funds on hand to discharge his claim, and that, on due demand, she failed to do so, Vaughn could have taken the steps pointed out by law to hold her personally responsible, and, after obtaining a judgment against her individually, he could have issued execution against her, and having recorded the judgment *before* her death, could have claimed a judicial mortgage on her real

estate and enforced it after her death against her succession and heirs.

It may be that he suffers, but his lot is of his own making, and he can not complain now that his derelictions have defeated his claim,. which otherwise perhaps might have been satisfied. Courts of justice can not supply wanting proceedings and assume the existence of judgments which never existed.

Rehearing refused.